CASE NO. 25-30205

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

_____

In re: In the Matter of Genesis Marine, LLC, as Owner and Operator of the M/V Anaconda and Barges GM 1006 and GM 5040, Petitioning for Exoneration from or Limitation of Liability

Genesis Marine, L.L.C., as owner and operator of the M/V Anaconda and barges GM 1006 and GM 5040,

Petitioner – Appellant

v.

Brandon Darrow,

Claimant – Appellee

_____

On Appeal from the United States District Court
for the Eastern District of Louisiana, Case No. 24-2881
The Honorable Nannette Jolivette Brown, Presiding

_____

## ORIGINAL BRIEF OF PETITIONER–APPELLANT GENESIS MARINE, LLC

_____

Evans Martin McLeod (La. Bar No. 24846)
Jeremy T. Grabill (La. Bar No. 34924)
Patrick M. Judd (La. Bar No. 40415)
PHELPS DUNBAR LLP
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130
Telephone: (504) 566-1311
Facsimile: (504) 568-9130

ATTORNEYS FOR PETITIONER-
APPELLANT GENESIS MARINE, LLC

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Fifth Circuit Rule 28.2.1, the undersigned counsel of record certifies that the following listed persons and entities have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

1. Genesis Marine, LLC, *Petitioner–Appellant*

2. Evans Martin McLeod, Jeremy T. Grabill, Patrick M. Judd, and Magdalini Galitou of PHELPS DUNBAR LLP, *Counsel for Genesis Marine, LLC*

3. Brandon Darrow, *Claimant–Appellee*

4. Joseph B. Marino, II, *Counsel for Brandon Darrow*

5. Richard P. Voorhies III and David J. Saltaformaggio of THE VOORHIES LAW FIRM, *Counsel for Brandon Darrow*

6. A.M. "Tony" Clayton and Michael P. Fruge of CLAYTON, FRUGE, WARD & HENDRY, *Counsel for Brandon Darrow*

SO CERTIFIED, this 16th day of June, 2025.

 */s/ Jeremy T. Grabill*
Jeremy T. Grabill

## STATEMENT REGARDING ORAL ARGUMENT

Petitioner–Appellant Genesis Marine, LLC ("Genesis") respectfully requests oral argument. In *In re Bonvillian Marine Service, Inc.*, 19 F.4th 787 (5th Cir. 2021), this Court held that the 6-month deadline for filing a limitation action set forth in 46 U.S.C. § 30529(a) is merely a "claim-processing rule" that has no bearing on a district court's subject matter jurisdiction, but did not discuss the implications of this seminal holding. Because the District Court's ruling in this case strictly (and erroneously) applied the 6-month deadline as if it remained a jurisdictional rule, Genesis believes that oral argument would be useful to the Court to fully explore the implications of *Bonvillian*. Moreover, oral argument would also be useful in light of the complicated factual record of this case, particularly because the District Court erred in evaluating Darrow's motion for summary judgment by failing to give Genesis, the nonmoving party, the benefit of all reasonable doubt in determining whether its limitation complaint was timely filed.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS.................................. ii

STATEMENT REGARDING ORAL ARGUMENT ........................... iii

TABLE OF AUTHORITIES................................................... vi

STATEMENT OF JURISDICTION ........................................ 1

STATEMENT OF THE ISSUE ............................................. 3

STATEMENT OF THE CASE............................................... 4

    A.    Factual Background.......................................... 8

        *1.*    *Darrow's Earning Capacity was Low and His Alleged Injuries were Nondescript*................................. 8

        *2.*    *The Collective Value of the Vessels is $12.5 Million*................................. 10

        *3.*    *Darrow's Original Expert Reports Confirmed His Claim Was Well Within the Value of the Vessels*......................... 11

        *4.*    *Darrow's Claim Ballooned in August 2024*................................. 12

    B.    Procedural History.......................................... 14

        *1.*    *Genesis Timely Filed Its Limitation Action*................................. 14

        *2.*    *Darrow Moved for Summary Judgment*............... 15

        *3.*    *The District Court Erred by Granting Darrow's Motion for Summary Judgment and Holding that this Limitation Action was Untimely*......................... 17

**SUMMARY OF THE ARGUMENT** .................................................... 19

**ARGUMENT** .......................................................................... 21

    **A.**    **Standard of Review** .................................................. 21

    **B.**    **Legal Standard** ........................................................ 21

    **C.**    **The District Court Erred in Granting Summary Judgment and Holding that Genesis' Limitation Action Was Untimely** ................... 23

        *1.*    *The 6-Month Deadline in § 30529(a) Is Merely a Claim-Processing Rule, Not a Rigid Jurisdictional Rule* ........................... 24

        *2.*    *The District Court Erred in Treating an Affirmative Defense in a Separate State Court Case as Competent Summary Judgment Evidence* ............................... 29

        *3.*    *The District Court Improperly Credited Darrow's Evidence and Drew Inferences in Darrow's Favor* ........................... 35

**CONCLUSION** ....................................................................... 44

**CERTIFICATE OF SERVICE** .................................................... 46

**CERTIFICATE OF COMPLIANCE** ............................................. 47

# TABLE OF AUTHORITIES

## Cases

*Ala. Farm Bureau Mut. Cas. Co. v. Am. Fid. Life Ins. Co.*
  606 F.2d 602 (5th Cir. 1979) ................................................... 22

*Alonso-Juarez v. Garland*
  80 F.4th 1039 (9th Cir. 2023) ............................................... 27

*Argueta-Hernandez v. Garland*
  87 F.4th 698 (5th Cir. 2023) ................................... 26, 27, 28

*Blankenship v. Buenger*
  653 F. App'x 330 (5th Cir. 2016) ............................... 32, 33, 34

*Bryant v. Helix Energy Sols., Inc.*
  404 So. 3d 804 (La. App. 1st Cir. 2024) ............................... 38

*Carlsbad Tech., Inc. v. HIF Bio, Inc.*
  556 U.S. 635 (2009) ............................................................ 25

*Crews v. Arundel Corp.*
  386 F.2d 528 (5th Cir. 1967) ............................................. 2, 3

*Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*
  530 F.3d 395 (5th Cir. 2008) ............................................... 21

*Firestone Tire & Rubber Co. v. Risjord*
  449 U.S. 368 (1981) .............................................................. 2

*FirsTier Mortg. Co. v. Invs. Mortg. Ins. Co.*
  498 U.S. 269 (1991) .............................................................. 1

*Giuliano v. Triangle Cap. Props., LLC*
  2023 WL 7414526 (S.D. Tex. Nov. 9, 2023) ........................ 30

*Glick v. White Motor Co.*
  458 F.2d 1287 (3d Cir. 1972) .............................................. 32

*Hamer v. Neighborhood Hous. Servs. of Chi.*
  583 U.S. 17 (2017) ............................................................... 25

*Harris v. Kansas City S. Ry. Co.*
  399 So. 3d 532 (La. App. 2d Cir. 2024)................................................38

*Heinsohn v. Carabin & Shaw, P.C.,*
  832 F.3d 224 (5th Cir. 2016)........................................................23

*Henderson ex rel. Henderson v. Shinseki*
  562 U.S. 428 (2011)...........................................................25, 28

*Heritage Bank v. Redcom Lab'ys, Inc.*
  250 F.3d 319 (5th Cir. 2001)........................................................31

*Holt v. State Farm Fire & Cas. Co.*
  627 F.3d 188 (5th Cir. 2010).........................................................21

*Howard v. Union Carbide Corp.*
  50 So. 3d 1251 (La. 2010) .......................................................38, 42

*In re Bonvillian Marine Service, Inc.*
  9 F.4th 787 (5th Cir. 2021) ....................iii, 4, 5, 7, 9, 19, 24, 25, 44

*In re Chem Carriers Towing, LLC*
  599 F. Supp. 3d 405 (E.D. La. 2022) ...............................................43

*In re Eckstein Marine Serv., L.L.C.*
  672 F.3d 310 (5th Cir. 2012)......................21, 24, 35, 36, 38, 39, 40, 43

*In re McCarthy Bros. Co./Clark Bridge*
  83 F.3d 821 (7th Cir. 1996)........................................................28

*In re Morania Barge No. 190, Inc.*
  690 F.2d 32 (2d Cir. 1982) .........................................................36

*In re RLB Contracting, Inc.*
  773 F.3d 596 (5th Cir. 2012)...........................................24, 35, 39, 40

*Lewis v. Lewis & Clark Marine, Inc.*
  531 U.S. 438 (2001)................................................................24

*Louisiana State ex rel. La. Dep't of Wildlife & Fisheries v. NOAA*
  70 F.4th 872 (5th Cir. 2023) .......................................................30

*MacDonald v. Gen. Motors Corp.*
110 F.3d 337 (6th Cir. 1997) ................................................................ 32

*Marquette Transp. Co. v. Great Lakes Dredge & Dock Co.*
524 F. App'x 989 (5th Cir. 2013) ........................................................ 38

*Martinez v. Bally's La., Inc.*
244 F.3d 474 (5th Cir. 2001) ............................................................... 31

*Martz v. Horazdovsky*
33 F.4th 1157 (9th Cir. 2022) .............................................................. 28

*Mays v. Dir., Off. of Workers' Comp. Programs*
938 F.3d 637 (5th Cir. 2019) ........................................................ 30, 31

*Orion Marine Constr., Inc. v. Carroll*
918 F.3d 1323 (11th Cir. 2019) .................................................... 36, 40

*Republic of France v. United States*
290 F.2d 395 (5th Cir. 1961) ................................................................. 2

*SEC v. Bankatlantic Bancorp, Inc.*
661 F. App'x 629 (11th Cir. 2016) ...................................................... 23

*Silverthorne Seismic, L.L.C. v. Sterling Seismic Servs.*
125 F.4th 593 (5th Cir. 2025) ............................................................... 2

*Smith v. United Servs. Auto. Ass'n*
405 So. 3d 749 (La. App. 1st Cir. 2024) ............................................. 38

*Tolan v. Cotton*
572 U.S. 650 (2014) ...................................................................... 22, 23

*Turner v. Baylor Richardson Med. Ctr.*
476 F.3d 337 (5th Cir. 2007) ............................................................... 21

*Ueckert v. Guerra*
38 F.4th 446 (5th Cir. 2022) ................................................................. 2

*Universal Am. Barge Corp. v. J-Chem, Inc.*
946 F.2d 1131 (5th Cir. 1991) ...................................................... 32, 33

*Vincent v. Nat'l Gen. Ins. Co.*
  399 So. 3d 140 (La. App. 5th Cir. 2024) ............................................... 38

*Wallace v. Tex. Tech Univ.*
  80 F.3d 1042 (5th Cir. 1996) ................................................................ 30

*Waste Mgmt. of La., L.L.C. v. River Birch, Inc.*
  920 F.3d 958 (5th Cir. 2019) ............................................................... 22

*Wilkins v. United States*
  598 U.S. 152 (2023) ............................................................................. 28

**Statutes**

8 U.S.C. § 1252 .............................................................................. 26, 27

28 U.S.C. § 1292 .............................................................................. 2, 3

28 U.S.C. § 1333 ................................................................................ 1

42 U.S.C. § 1983 .............................................................................. 33

46 U.S.C. § 30529 ..................................... iii, 3, 4, 7, 19, 24, 27, 29, 44

**Rules**

Fed. R. Civ. P. 56 ............................................................................. 21

Federal Rule of Appellate Procedure 4 ............................................ 1, 2

## STATEMENT OF JURISDICTION

This is an appeal of a summary judgment ruling entered by the U.S. District Court for the Eastern District of Louisiana on March 27, 2025.[1] The District Court granted a summary judgment motion filed by limitation claimant and appellee Brandon Darrow ("Darrow") and held that Genesis' limitation action was not timely filed. The District Court had subject matter jurisdiction over this limitation action pursuant to 28 U.S.C. § 1333. A timely Notice of Appeal was filed by Genesis on April 3, 2025.[2]

This Court has appellate jurisdiction under Federal Rule of Appellate Procedure 4(a)(2), which permits a notice of appeal when a district court announces a decision that would be appealable if immediately followed by the entry of judgment. *See FirsTier Mortg. Co. v. Invs. Mortg. Ins. Co.*, 498 U.S. 269 (1991). By deciding that Genesis' limitation action was untimely, the District Court's summary judgment ruling was a "final decision . . . that end[ed] the litigation on the merits and [left] nothing for the court to do but execute the judgment."

---

[1] ROA.900 (District Court's Order Granting Summary Judgment).

[2] ROA.928 (Notice of Appeal).

1

*Silverthorne Seismic, L.L.C. v. Sterling Seismic Servs.*, 125 F.4th 593, 597 (5th Cir. 2025) (quoting *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 373 (1981)).  And even when, as here, there was no "separate document" entered by the District Court noting the final judgment, this failure "does not affect the validity of an appeal from that judgment or order."  Fed. R. App. P. 4(a)(7)(B); *see also Ueckert v. Guerra*, 38 F.4th 446, 452–53 (5th Cir. 2022) ("The lack of a separate document did not prevent him from appealing immediately.").[3]

Alternatively, this Court has jurisdiction pursuant to 28 U.S.C. § 1292(a)(3), which grants jurisdiction for appeals from interlocutory decrees in which the district court determines the rights and liabilities of the parties to admiralty cases.  *See Republic of France v. United States*, 290 F.2d 395, 398 (5th Cir. 1961) (finding appellate jurisdiction under § 1292(a)(3) over district court ruling that petitioners were not entitled to exoneration from or limitation of liability); *Crews v. Arundel Corp.*, 386 F.2d 528, 530 (5th Cir. 1967) (finding appellate jurisdiction under §

---

[3] Although the District Court initially suggested that it would proceed with the adjudication of Genesis' third-party complaint against Petroleum Fuel and Terminal Co. notwithstanding its summary judgment ruling, the District Court subsequently decided to administratively stay all claims in the limitation action pending resolution of this appeal, which reinforces the fact that the summary judgment ruling is a final, appealable decision.

1292(a)(3) over district court decision that Jones Act negligence and unseaworthiness claims were time-barred by respective statutes of limitations, because "appellant's opportunity to prove his negligence and unseaworthiness claims was completely cut off" by the district court's order).

The District Court held that this limitation action was time-barred by the 6-month deadline for filing limitation actions under 46 U.S.C. § 30529(a).[4]  Thus, Genesis' "opportunity to" limit its liability in federal court through the Limitation of Liability Act of 1851 "was completely cut off" by the District Court's ruling.  *Crews*, 386 F.2d at 530.  As a result, the District Court's ruling was a "final denial" of Genesis' claims and rights under the Limitation Act and appellate jurisdiction exists under 28 U.S.C. § 1292(a)(3).  *Id.* at 529.

## STATEMENT OF THE ISSUE

1) Did the District Court err in granting the summary judgment motion filed by Claimant-Appellee Brandon Darrow and holding that Genesis' limitation complaint was untimely under the 6-month deadline of 46 U.S.C. § 30529(a)?

---

[4]  ROA.919 (District Court's Order Granting Summary Judgment).

## STATEMENT OF THE CASE

This appeal concerns an improper grant of summary judgment regarding the timeliness of an action for limitation of liability and an early application of this Court's holding in *In re Bonvillian Marine Service, Inc.*, 19 F.4th 787 (5th Cir. 2021), that the 6-month deadline for filing a limitation action set forth in 46 U.S.C. § 30529(a) is a mere claim-processing rule that has no bearing on a district court's subject matter jurisdiction.

This originally appeared to be a routine Jones Act case involving an alleged back injury to a tankerman on a Genesis vessel. Darrow filed suit in state court in December 2021, several weeks after this Court's decision in *Bonvillian*. That timing is important because the holding announced in *Bonvillian* that the 6-month deadline of 46 U.S.C. § 30529(a) was not jurisdictional but merely a "claim-processing rule" gave vessel owners comfort that they no longer needed to reflexively file for limitation within 6 months of every incident. Rather, they could try to resolve the claim and otherwise litigate in state court unless and until they received reasonable notice that the claim(s) might exceed the value of the vessel(s) at issue, triggering the 6-month window to file for limitation and incur

the associated costs of posting a sizeable bond.  Genesis and its counsel operated under this new post-*Bonvillian* framework for over three years in this case—beginning with receipt of Darrow's pre-suit notice and continuing through receipt of his state court petition, his medical records and original expert reports, and various correspondence from Darrow's counsel.  Throughout that period, Genesis had no reason to believe that Darrow's claim could *reasonably* come close to the $12.5 million value of the vessels at issue, and so Genesis did not file for limitation.

That changed drastically in August 2024 when Darrow submitted supplemental expert reports opining for the first time that he was totally and permanently disabled and could not return to work in any capacity. Then, on August 21, 2024, Darrow's counsel demanded that Genesis pay over $20 million to settle the case—the first settlement demand ever made in the case.[5]  Notably, the August 2024 settlement demand added

---

[5] *See* ROA.692 (Darrow's Demand/Settlement Proposal).  Federal Rule of Evidence 408 "permits settlement evidence for any purpose except to prove or disprove liability or the amount of the claim."  *U.S. Aviation Underwriters, Inc. v. Olympia Wings, Inc.*, 896 F.2d 949, 956 (5th Cir. 1990).  The District Court was permitted to consider the settlement demand for the purpose of determining when Genesis first had notice that it was *reasonably* possible that Darrow's claim might exceeded the value of the vessels.  Rule 408, in fact, envisions that a permissible purpose for considering a settlement offer is to "negat[e] a contention of undue delay," as is the case here.  Fed. R. Evid. 408.

5

$12 million for general damages and $2 million for punitive damages to the various special damages totaling $6 million that Darrow had previously been seeking. Thus, in August 2024, Darrow's alleged damages increased from $6 million to over $20 million. Notably, the parties had been set for mediation on July 10, 2024, but Darrow's counsel unilaterally cancelled the mediation just a few weeks before serving the supplemental expert reports and settlement demand because Darrow's counsel was "not in a position to meaningfully negotiate or fully advise Mr. Darrow on the extent of his damages or medical needs by that date."[6] If Darrow's counsel didn't have a reasonable appreciation of his client's alleged damages in July 2024, how can it be said that Genesis was on reasonable notice that the claim might exceed $12.5 million at that time?

After these developments in August 2024 put Genesis on notice for the first time that Darrow's claim now might exceed the value of the vessels, Genesis timely filed this limitation action in the District Court on December 13, 2024, within approximately 4 months of receiving such notice from Darrow. Darrow then allowed the limitation action to

---

[6] *See* ROA.687 (McLeod Declaration, ¶ 8); *see also* ROA.706 (July 1, 2024 E-mail Correspondence).

6

proceed for over 2 months before he moved for summary judgment on the issue of timeliness.

On March 27, 2025, the District Court entered an Order and Reasons granting Darrow's motion for summary judgment and holding that Genesis' limitation action was untimely. As discussed below, the District Court erred by strictly applying the 6-month deadline in 46 U.S.C. § 30529(a) as if it remained a jurisdictional rule, contrary to this Court's holding in *Bonvillian* that it is a mere "claim-processing rule." As this Court and many others have recognized, claim-processing rules are less stern than jurisdictional rules, and there are sound practical considerations for not adopting an interpretation that encourages vessel owners to file unnecessary and protective limitation actions in all injury cases for fear of losing the ability to file for limitation if, as occurred in this case, the case cannot be settled and the injuries later become more serious and eventually implicate the value of the vessel(s) at issue.

On a more granular level, the District Court's erroneous application of the 6-month claim-processing rule manifested in several fundamental aspects of its ruling. First, the District Court erroneously determined that an affirmative defense that Genesis asserted in response to Darrow's

state court petition was a factual admission that supported summary judgment in Darrow's favor.  Second, the District Court also erred by failing to view the facts in the light most favorable to Genesis as the nonmoving party and failing to give Genesis the benefit of all reasonable doubt in determining whether its limitation action was timely filed.

Accordingly, this Court should reverse the District Court's summary judgment ruling and hold that Genesis' limitation action was timely filed within 6 months of being first put on notice in August 2024 that Darrow's claim might reasonably exceed the value of the vessels or, alternatively, that there are at least genuine factual disputes regarding when Genesis first received sufficient notice and, thus, whether this limitation action was timely filed.

## A.    Factual Background

### 1.    *Darrow's Earning Capacity was Low and His Alleged Injuries were Nondescript*

On or about December 23, 2020, Brandon Darrow, a tankerman on the M/V ANACONDA, allegedly injured his back while handling mooring lines at a docking facility in Mt. Airy, Louisiana.

8

Darrow's counsel sent an initial notice letter to Genesis' counsel on June 28, 2021,[7] and subsequently filed a Jones Act suit in Louisiana state court on December 23, 2021, several weeks after this Court's decision in *Bonvillian*.[8] Neither his initial pre-suit notice letter nor his state court petition quantified Darrow's alleged damages. There were also no allegations that Darrow, a tankerman, had a high earning capacity— rather, he alleged that he was making only "$250 per day plus found and fringe benefits" working on the ANACONDA.[9] The petition gave no specifics on the types of injury allegedly suffered, beyond vague assertions that Darrow "sustained serious, painful injuries to his back, spine and other parts of his body and psychological, mental, and/or emotional injuries."[10] Based on these nondescript injuries, Darrow sought "payment of past, present, and future adequate maintenance

---

[7] *See* ROA.684 (June 28, 2021 Correspondence); *see also* ROA.686 (McLeod Declaration, ¶ 3).

[8] *See* ROA.688 (Darrow's State Court Petition for Damages). Darrow originally filed suit in Orleans Parish Civil District Court, but the case was subsequently transferred to the 40th Judicial District Court for the Parish of St. John the Baptist.

[9] *See* ROA.688–689 (Darrow's State Court Petition for Damages, ¶ 6). This equates to a monthly income of approximately $5,400, and an annual income of approximately $65,000.

[10] ROA.689 (Darrow's State Court Petition for Damages, ¶ 6).

benefits, as well as past, present, and future payment of any and all cure benefits," including "attorney's fees, punitive damages, and an additional compensatory award for any acts of negligence on the part of the defendant which would result in aggravation or deterioration of the plaintiff's medical condition."[11]

### 2.    *The Collective Value of the Vessels is $12.5 Million*

Genesis is the owner and operator of the M/V ANACONDA and Barges GM 1006 and GM 5040 (collectively, the "Vessels").[12]    The ANACONDA is a tug bearing official number 1257752, built in 2015, with principal dimensions of 105.6 feet in length and 32 feet in breadth.[13]    The Barge GM 1006 is a tank barge bearing official number 1252974 with principal dimensions of 297 feet in length and 54 feet in width.[14]    The Barge GM 5040 is a tank barge bearing official number 1220841 with principal dimensions of 297 feet in length and 54 feet in width.[15]    It is undisputed that the collective value of these Vessels is $12.5 million.[16]

---

[11] ROA.690 (Darrow's State Court Petition for Damages, ¶ 11).

[12] ROA.9 (Genesis' Limitation Complaint, ¶¶ 4–5).

[13] ROA.9 (Genesis' Limitation Complaint, ¶¶ 4–5).

[14] ROA.9 (Genesis' Limitation Complaint, ¶¶ 4–5).

[15] ROA.9 (Genesis' Limitation Complaint, ¶¶ 4–5).

[16] ROA.11 (Genesis' Limitation Complaint, ¶ 17); *see also* ROA.25 (Ad Interim Stipulation).

### 3.    *Darrow's Original Expert Reports Confirmed His Claim Was Well Within the Value of the Vessels*

Beginning with Darrow's initial notice to Genesis and continuing for over three years, Genesis had no indication that Darrow's claim could *reasonably* come close to $12.5 million.[17]   Rather, all evidence and communications indicated that this was a standard Jones Act case that would never rise to the value of the Vessels at issue.[18]

Darrow served his expert reports in state court on January 29, 2024, and those reports confirmed that Darrow's claim was not worth anywhere near $12.5 million.  Darrow's economic experts opined that his maximum claim for lost wages was approximately $3.5 million,[19] an extremely speculative amount because it assumed that he would have been promoted four times to become a captain, even though at the time of the accident he was only, by his own description, a "newly minted" tankerman[20] with no prior experience in the maritime industry.[21]   His life care expert opined that his future medical expenses were in the range

---

[17] *See* ROA.686 (McLeod Declaration, ¶ 4).

[18] *See* ROA.686 (McLeod Declaration, ¶ 4).

[19] *See* ROA.713 (Jan. 29, 2024 Expert Report of Malcolm M. Dienes, L.L.C.).

[20] ROA.61 (Darrow's Motion for Summary Judgment, at 2).

[21] *See* ROA.746 (Jan. 29, 2024 Expert Report of Joyce Beckwith, at 3).

of $1.7 million.[22]    At that time, Darrow's vocational expert, Joyce Beckwith, opined that based on the opinions of Darrow's treating physicians, Darrow might be restricted to sedentary or light physical demand level duty, notwithstanding that neurosurgeon Dr. Donald Dietze had never issued any permanent work restrictions.[23]    Beckwith simply recommended that Darrow follow up with quarterly vocational evaluations.[24]

### 4.    Darrow's Claim Ballooned in August 2024

On July 1, 2024, Darrow's counsel unilaterally cancelled a mediation that had been set for July 10, 2024 because his counsel represented that "[w]e will not be in a position to meaningfully negotiate or fully advise Mr. Darrow on the extent of his damages or medical needs by that date."[25]

Then in early August 2024, Darrow submitted supplemental expert reports opining for the first time that Darrow was totally and permanently disabled and could not return to work in any capacity,

---

[22] See ROA.721 (Jan. 29, 2024 Expert Report of Shelly N. Savant).

[23] See ROA.749 (Jan. 29, 2024 Expert Report of Joyce Beckwith, at 6).

[24] ROA.751 (Jan. 29, 2024 Expert Report of Joyce Beckwith, at 8).

[25] See ROA.687 (McLeod Declaration, ¶ 8); see also ROA.706 (July 1, 2024 E-mail Correspondence).

which greatly increased the risk of a large general damages award on top of the special damages he was previously seeking.[26]  Specifically, in her August 5, 2024 supplemental report, vocational rehabilitation expert Beckwith wrote that based on her conversation with Dr. Dietze in August 2024, "[g]iven the complexity of his injury due to depression and multiple surgeries, Dr. Dietze confirmed patient is totally and permanently disabled and unable to return to the work in any capacity," and "[Darrow] has been permanently precluded from returning to workforce."[27]

Then, confirming a fundamental change in the case, on August 21, 2024, Darrow's counsel sent a letter demanding that Genesis pay over $20 million to settle—the first settlement demand that had ever been made in the case.[28]  Notably, in addition to the $6 million in various special damages that Darrow had previously been seeking, this settlement demand added $12 million for general damages and $2 million

---

[26] *See* ROA.686 (McLeod Declaration, ¶ 5).

[27] ROA.753 (Aug. 5, 2024 Supplemental Expert Report of Joyce Beckwith, at 2); *see also* ROA.759 (Aug. 2, 2024 Supplemental Expert Report of Shelly N. Savant); ROA.807 (Aug. 13, 2024 Supplemental Expert Report of Malcolm M. Dienes, L.L.C.).

[28] *See* ROA.687 (McLeod Declaration, ¶ 6).

for punitive damages.  The full breakdown of this demand was as

follows:[29]

| | | |
|---|---|---|
| 1. | For Past Cure | $327,558.50 |
| 2. | For Future Cure | $1,934,834.00 |
| 3. | For Past and Future Lost Wages/ | $3,912,936.00 |
| | Lost Earning Capacity/Fringe Benefits | |
| 4. | For General Damages (including past, present, | $12,000,000.00 |
| | and future pain and suffering, mental anguish, | |
| | and loss of enjoyment of life; and physical disfigurement) | |
| 5. | For Punitive Damages | $2,000,000.00 |

_____

**Total Damages:  $20,175,328.50**

And in early September 2024, Darrow enrolled experienced co-counsel

from Clayton, Fruge, Ward & Henry for the first time, further raising the

stakes.[30]

## B.    Procedural History

### 1.    *Genesis Timely Filed Its Limitation Action*

Because these developments in August 2024 were the first written

notice of a potentially limitable claim, Genesis timely filed this limitation

action less than 4 months later on December 13, 2024.[31]  In its Verified

Complaint in the District Court, Genesis explained that the $20 million

---

[29] ROA.700 (Darrow's Demand/Settlement Proposal, at 9).

[30] *See* ROA.703 (Darrow's Motion to Enroll Co-Counsel of Record in State Court).

[31] *See* ROA.687 (McLeod Declaration, ¶ 9); ROA.8 (Genesis' Limitation Complaint).

demand on August 21, 2024, was the first time it had a reasonable basis to believe that the amount of Darrow's claim could possibly exceed the $12.5 million value of the Vessels.[32]

### 2. *Darrow Moved for Summary Judgment*

On February 18, 2025, over 2 months after Genesis filed its limitation action, Darrow moved for summary judgment arguing that the limitation complaint was untimely.[33]  Darrow asserted that Genesis' affirmative defense of limitation of liability in its answer to his state court petition was a judicial admission that there was a reasonable possibility that Darrow's claim would exceed the value of the Vessels.[34] Darrow also argued that the "undisputed facts firmly establish that before June 13, 2024, there unequivocally was a reasonable possibility that the claims may exceed the value of the vessel."[35]  However, in support of this assertion, Darrow merely reiterated the timeline of interactions between the parties—including Darrow's provision of medical records and evaluations to Genesis—but did not point to any

---

[32] ROA.10 (Genesis' Limitation Complaint, ¶ 8).

[33] ROA.60 (Darrow's Motion for Summary Judgment).

[34] ROA.78–79 (Darrow's Motion for Summary Judgment, at 19–20).

[35] ROA.82 (Darrow's Motion for Summary Judgment, at 23).

details in those documents that demonstrated the reasonable possibility that his claim might exceed $12.5 million.[36]

In response, Genesis admitted the receipt of documents from Darrow—including medical records and operative expert reports—but explained that none of those documents conveyed the reasonable possibility that Darrow's claim might exceed the value of the Vessels until Darrow served his supplemental expert reports and settlement demand in August 2024.[37]  Genesis also explained in its opposition that its assertion of the affirmative defense in state court could not, under this Court's precedents, serve as a judicial admission in this separate action in federal court.[38]  Furthermore, Genesis explained that its affirmative defense could not be a judicial admission because it was not a factual assertion with the effect of withdrawing a fact from contention, but was instead merely a preservation of the legal defense of limitation.[39]

---

[36] *See* ROA.63–70 (Darrow's Motion for Summary Judgment, at 4–11).

[37] *See* ROA.820–829 (Genesis' Response to Darrow's Statement of Uncontested Material Facts, at 1–10).

[38] *See* ROA.674–678 (Genesis' Opposition to Summary Judgment, at 12–16).

[39] ROA.674–678 (Genesis' Opposition to Summary Judgment, at 12–16).

**3.** ***The District Court Erred by Granting Darrow's Motion for Summary Judgment and Holding that this Limitation Action was Untimely***

On March 27, 2025, the District Court granted Darrow's summary judgment motion and held that Genesis did not timely file this limitation action.[40]

Although the District Court did not directly address the question of whether Genesis' affirmative defense in state court was a judicial admission (stating that the debate "is of no consequence for the purposes of resolving this motion"), it nevertheless incorrectly held that the affirmative defense in Genesis' state court answer was a fact satisfying the reasonable possibility standard and supporting the entry of summary judgment on the issue of timeliness.[41]

In its Order and Reasons, the District Court also referred to "Genesis's undisputed knowledge of the serious and developing extent of Darrow's injuries and required care" in August 2022,[42] notwithstanding that Genesis provided ample evidence that the first documents indicating a reasonable possibility that Darrow's claim could exceed the value of the

---

[40] ROA.900 (District Court's Order Granting Summary Judgment).

[41] ROA.914–915 (District Court's Order Granting Summary Judgment, at 15–16).

[42] ROA.914 (District Court's Order Granting Summary Judgment, at 15).

17

Vessels came in August 2024.[43]  The District Court did not acknowledge Genesis' factual assertions that no award for a back injury similar to Darrow's had come close to $12.5 million in Louisiana prior to August 2024.[44]  The District Court instead "weighed . . . the growing evidence of Darrow's injuries" prior to 2024, along with Genesis' affirmative defense in state court, and became "convinced these additional facts put to rest the question" of when Genesis received written notice of the reasonable possibility that Darrow's claim could exceed the value of the Vessels.[45]

Based on these multiple errors, the District Court incorrectly held that "the undisputed evidence in the record demonstrates Genesis's limitation action was not timely filed."[46]

Genesis timely appealed the District Court's summary judgment ruling to this Court.[47]

---

[43] ROA.679–682 (Genesis' Opposition to Summary Judgment, at 17–20).

[44] *See* ROA.916 (District Court's Order Granting Summary Judgment, at 17); ROA.680 (Genesis' Opposition to Summary Judgment, at 18).

[45] ROA.916 (District Court's Order Granting Summary Judgment, at 17).

[46] ROA.919 (District Court's Order Granting Summary Judgment, at 20).

[47] ROA.928 (Notice of Appeal).

## SUMMARY OF THE ARGUMENT

The District Court erred by strictly applying the 6-month deadline in 46 U.S.C. § 30529(a) as if it remained a jurisdictional rule, contrary to this Court's holding in *Bonvillian* that it is a mere "claim-processing rule." This strict and improper application of the 6-month deadline is reflected in several erroneous aspects of the District Court's ruling.

First, the District Court improperly determined that Genesis' affirmative defense of limitation of liability raised in its state court answer was an admission of fact that supported the entry of summary judgment on the issue of timeliness, in clear contravention of this Court's precedents.

Second, the District Court failed to resolve all ambiguities, draw all permissible inferences, and view the evidence in the light most favorable to Genesis as the nonmoving party, as is required when evaluating a Rule 56 summary judgment motion. If it had done so, the District Court should have concluded that this limitation action was timely filed within 6 months of Genesis being first put on notice in August 2024 that Darrow's claim might reasonably exceed the $12.5 million value of the Vessels at issue. Alternatively, at a bare minimum, the District Court

should have at least concluded that there are genuine issues of material fact as to when Genesis first received written notice reasonably raising the possibility that Darrow's claim might exceed the value of the Vessels. For example, the District Court failed to view in the light most favorable to Genesis facts that Darrow was only a "newly minted" tankerman who did not earn a high wage; his claim for lost future wages was extremely speculative; the value of the Vessels was high at $12.5 million; and no award for a similar back injury had come close to that amount in Louisiana prior to August 2024. Instead, the District Court chose to credit competing evidence submitted by Darrow regarding his alleged injuries, medical treatments, and expert opinions to erroneously conclude that "the undisputed evidence in the record demonstrates Genesis's limitation action was not timely filed."[48]

For all of these reasons, this Court should reverse the District Court's summary judgment ruling and hold that Genesis' limitation action was timely filed or, alternatively, that there are at least genuine factual disputes regarding when Genesis first received sufficient notice and, thus, whether this limitation action was timely filed.

---

[48] ROA.919 (District Court's Order Granting Summary Judgment, at 20).

# ARGUMENT

## A.    Standard of Review

Whether a limitation action was timely filed is reviewed *de novo*. *In re Eckstein Marine Serv., L.L.C.*, 672 F.3d 310, 314 (5th Cir. 2012). This Court also reviews a district court's grant of summary judgment *de novo* and applies the same standard as the district court. *Holt v. State Farm Fire & Cas. Co.*, 627 F.3d 188, 191 (5th Cir. 2010).

## B.    Legal Standard

Summary judgment is only appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  At this stage, the Court must "refrain from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).  In evaluating a motion for summary judgment, the court must resolve all ambiguities, draw all permissible inferences, and view the evidence in the light most favorable to the nonmoving party.  *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).  In particular, the nonmoving party must "be given the benefit of all reasonable doubt in determining whether a genuine factual issue exists." *Ala. Farm Bureau Mut. Cas. Co.*

*v. Am. Fid. Life Ins. Co.*, 606 F.2d 602, 609 (5th Cir. 1979) (citation omitted).

Here, the District Court failed to apply the correct summary judgment standard, instead weighing the competing evidence and resolving inferences in favor of the moving party. *See Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (vacating a decision of this Court that it described as "reflect[ing] a clear misapprehension of summary judgment standards" because that decision "fail[ed] to credit evidence that contradicted some of its key factual conclusions," and "improperly weighed the evidence and resolved disputed issues in favor of the moving party") (cleaned up).

Since *Tolan*, this Court has emphasized these fundamental summary judgment principles, but the District Court here did not heed such teachings. *See, e.g.*, *Waste Mgmt. of La., L.L.C. v. River Birch, Inc.*, 920 F.3d 958, 964 (5th Cir. 2019) ("On summary judgment the inferences to be drawn from the underlying facts contained in the affidavits, depositions, and exhibits of record must be viewed in the light most favorable to the party opposing the motion. Credibility determinations have no place in summary judgment proceedings because non-movants'

summary judgment evidence must be taken as true.  Moreover, when state of mind is an essential element of the nonmoving party's claim, it is less fashionable to grant summary judgment because a party's state of mind is inherently a question of fact which turns on credibility.") (cleaned up) (citations omitted); *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 245 (5th Cir. 2016) ("By choosing which testimony to credit and which to discard, a court improperly weighs the evidence and resolves disputed issues in favor of the moving party.  Doing so is tantamount to making a credibility determination, and—at this summary judgment stage—a court may make no credibility determinations.") (cleaned up) (citations omitted); *see also SEC v. Bankatlantic Bancorp, Inc.*, 661 F. App'x 629, 636 (11th Cir. 2016) ("Although the district court did not find Defendants' evidence compelling, a court nevertheless must credit information that contradicts its 'key factual conclusions'—otherwise it risks partaking in a weighing of the evidence, which is prohibited at summary judgment.") (quoting *Tolan*, 572 U.S. at 657).

## C.    The District Court Erred in Granting Summary Judgment and Holding that Genesis' Limitation Action Was Untimely

The Limitation Act "allows a vessel owner to limit liability for damage or injury . . . to the value of the vessel or the owner's interest in

the vessel." *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 446 (2001). To invoke these protections, the vessel owner must bring an action in district court "within 6 months after a claimant gives the owner written notice of a claim." 46 U.S.C. § 30529(a).

A written notice triggers this 6-month period if it "reveals a 'reasonable possibility' that the claim will exceed the value of the vessel." *In re RLB Contracting, Inc.*, 773 F.3d 596, 602 (5th Cir. 2012) (quoting *In re Eckstein*, 672 F.3d at 317). This standard requires two inquiries: (1) whether "the writing communicates the *reasonable possibility* of a claim" and (2) whether "it communicates the *reasonable possibility* of damages in excess of the vessel's value." *In re RLB Contracting*, 773 F.3d at 602 (emphasis in original). Answering these questions requires a "fact-intensive inquiry into the circumstances of the case." *In re Eckstein*, 672 F.3d at 317.

### 1. The 6-Month Deadline in § 30529(a) Is Merely a Claim-Processing Rule, Not a Rigid Jurisdictional Rule

Under this Court's seminal decision in *Bonvillian*, the 6-month deadline for filing a limitation action is now recognized merely as a claim-processing rule that has no bearing on a district court's subject matter jurisdiction. 19 F.4th at 794. This shift to a claim-processing rule is no

small matter, and members of the bar widely recognized this important change in the law. As noted above, Darrow's state court suit was filed just weeks after this Court's decision in *Bonvillian* and that decision heavily influenced Genesis' decision not to immediately file for limitation.

Subject matter jurisdiction defines the authority for courts "to hear a given type of case" and "the extent to which a court can rule on the conduct of persons or the status of things." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009). Jurisdictional limitations therefore effectively foreclose an entire class of claims and jurisdictional objections can be raised at any time. Claim-processing rules, on the other hand, "seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435 (2011). According to the Supreme Court, claim-processing rules are not as rigid and "stern" as jurisdictional rules. *See Hamer v. Neighborhood Hous. Servs. of Chi.*, 583 U.S. 17, 20 (2017).

Although the *Bonvillian* decision did not address the practical implication of its holding that the 6-month deadline for limitation actions is a mere claim-processing rule, this Court subsequently emphasized the

practical and flexible goals of claim-processing rules in other contexts. For example, in *Argueta-Hernandez v. Garland*, 87 F.4th 698 (5th Cir. 2023), this Court made clear that avoiding a flood of "premature" legal filings was one such goal because premature filings in federal court would be "immensely resource intensive" and "disastrous" to the normal course of judicial review. *Id.* at 706 n.5. There, an immigration judge first ordered an immigrant's removal in 2007. The immigrant then reentered the country, and in 2019 the Department of Homeland Security reinstated his 2007 removal order. Almost two years later, however, the immigrant's asylum officer conducted a reasonable fear interview, and Homeland Security initiated withholding-of-removal proceedings given its findings. The immigration judge ultimately denied his withholding of removal. The immigrant sought review of the removal order within 30 days of the Board of Immigrations Appeals' affirmance but not within 30 days of the controlling 2019 removal reinstatement. This Court questioned whether it could review the removal decision, which turned on whether the 30-day deadline under 8 U.S.C. § 1252(b)(1) was jurisdictional or merely a claim-processing rule. *Id.* at 705.

This Court held that § 1252(b)(1) was a claim-processing rule, not jurisdictional, and thus the Court should consider the consequences on immigration and the overall judicial system if it were to hold the immigrant's petition untimely. *Id.* at 706. Treating a claim-processing rule as essentially a strict jurisdictional rule, the Court explained, would be "immensely resource intensive" and lead to an influx of noncitizens filing "premature petitions for review." *Id.* at 706 n.5 (quoting *Alonso-Juarez v. Garland*, 80 F.4th 1039, 1053 (9th Cir. 2023)). Petitioners would be forced "to file a petition for review to preserve the possibility of judicial review, even when unsure if they would need to, or even choose to, challenge the decision in the future." *Id.* Courts would then have to "dedicate resources to tracking and closing moot or abandoned petitions" and "to establish a system of holding petitions for review in abeyance for years at a time." *Id.*

The District Court in this case ignored the practical reality of the 6-month claim-processing rule in 46 U.S.C. § 30529(a) by creating a pseudo-jurisdictional, hard-and-fast rule that will once again cause vessel owners to preemptively file for limitation within 6 months of every incident. But as the Supreme Court recently said, "[l]oosely treating

27

procedural requirements as jurisdictional risks undermining the very reason Congress enacted them." *Wilkins v. United States*, 598 U.S. 152, 157 (2023). Congress enacts claim-processing rules to "promote the orderly progress of litigation within our adversarial system" and to avoid overloading it with premature suits. *See id.* (quoting *Shinseki*, 562 U.S. at 435); *see also Argueta-Hernandez*, 87 F.4th at 706 n.5.

Indeed, two other Circuits have recognized these practical realities in the limitation context. *See Martz v. Horazdovsky*, 33 F.4th 1157, 1167 (9th Cir. 2022) ("Congress could have been concerned that if a mere suggestion of a claim were enough to start the six-month clock, claimants would be encouraged to be ambiguous in their communications with vessel owners."); *In re McCarthy Bros. Co./Clark Bridge*, 83 F.3d 821, 829–30 (7th Cir. 1996) ("The real danger in failing to hold claimants to a fairly high level of specificity in letters is that the claimant may nullify a shipowner's right to file a limitation action by sending a cryptic letter and then waiting more than six months to file a complaint.").

If not corrected, the District Court's ruling in this case will undermine these practical considerations by forcing all vessel owners to file limitation actions in federal court anytime an injury occurs—no

matter how minor—for fear that one day the case may deteriorate or they may receive a $20 million settlement demand but be precluded from filing for limitation under a strict, pseudo-jurisdictional interpretation of the 6-month deadline in 46 U.S.C. § 30529(a).

### 2. *The District Court Erred in Treating an Affirmative Defense in a Separate State Court Case as Competent Summary Judgment Evidence*

The District Court improperly determined that Genesis' affirmative defense of limitation of liability raised in its answer to Darrow's state court suit was an admission of fact sufficient to support granting Darrow's motion for summary judgment in federal court.

In its state court answer, Genesis lodged seven affirmative defenses. The sixth defense stated:

> AND NOW FURTHER ANSWERING THE PETITION, Genesis avers . . . that the amount of damages sued for in the Petition herein greatly exceeds the amount or value of Genesis's interests in the M/V ANACONDA, and her freight then pending, if any; and, Genesis accordingly invokes the benefits of the provisions of the Revised Statutes of the United States of America and the acts amendatory thereof and supplemental thereto in limitation of the liability of shipowners, under which provisions plaintiff is not entitled to recover damages in a sum in excess of the amount or value of Genesis's interest in said M/V ANACONDA at the conclusion of the voyage on which plaintiff allegedly sustained injuries, if any, and her freight then pending, even if Genesis be held

liable for or by reason of the matters, or any of them, set forth in the Petition herein, which liability is specifically denied.[49]

An allegation made in an affirmative defense is just that—an allegation. Genesis' affirmative defense of limitation of liability in the separate state court case did not constitute a judicial admission that can be used as evidence to support summary judgment in this federal court suit. *See Louisiana State ex rel. La. Dep't of Wildlife & Fisheries v. NOAA*, 70 F.4th 872, 881 (5th Cir. 2023) ("[P]leadings are not summary judgment evidence.") (quoting *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996)); *see also Giuliano v. Triangle Cap. Props., LLC*, 2023 WL 7414526, at *4 (S.D. Tex. Nov. 9, 2023) ("Mere assertions in pleadings do not constitute competent summary judgment evidence.").

Although judicial admissions may be considered as established facts at summary judgment, Genesis' affirmative defense allegation was not a judicial admission. A judicial admission is a formal factual concession in a pleading or a stipulation by a party or counsel that is binding on the party making it. *See Mays v. Dir., Off. of Workers' Comp. Programs*, 938 F.3d 637, 647 (5th Cir. 2019); *Martinez v. Bally's La., Inc.*,

---

[49] ROA.818 (Genesis' State Court Answer, at 4).

244 F.3d 474, 476 (5th Cir. 2001). Statements "made during the course of a lawsuit—even a statement made in a pleading filed with the court—should be considered a judicial admission only 'if it was made intentionally as a waiver, releasing the opponent from proof of fact.'" *Mays*, 938 F.3d at 647 (quoting *Martinez*, 244 F.3d at 476). A judicial admission must be (1) "made in a judicial proceeding," (2) "contrary to a fact essential to the theory of recovery," (3) "deliberate, clear, and unequivocal," (4) "such that giving it conclusive effect meets with public policy," and (5) "about a fact on which a judgment for the opposing party can be based." *Heritage Bank v. Redcom Lab'ys, Inc.*, 250 F.3d 319, 329 (5th Cir. 2001) (finding statements made in a separate suit to dissolve an injunction did not qualify as judicial admissions and defendant was not precluded from raising them).

Genesis' affirmative defense in its state court answer cannot constitute a "judicial admission" for various reasons. First, this Court's law is clear that statements can only serve as formal judicial admissions in the case in which they are made. As this Court held in *Heritage Bank*, "judicial admissions are not conclusive and binding in a separate case from the one in which the admissions are made." 250 F.3d at 329 (quoting

*Universal Am. Barge Corp. v. J-Chem, Inc.*, 946 F.2d 1131, 1142 (5th Cir. 1991)).  Without question, the affirmative defense here was raised in a separate suit in front of a separate court.

Genesis' affirmative defense also cannot be a judicial admission because it was not a factual assertion with the effect of withdrawing a fact from contention.  Instead, the affirmative defense served to simply preserve a legal theory of defense.  As this Court has noted, an "affirmative defense" raised "in the prior state court suit would likely not even constitute a judicial admission in the prior state suit, itself," because it was simply a "legal theory," not a "fact."  *Blankenship v. Buenger*, 653 F. App'x 330, 335 & n.15 (5th Cir. 2016) (citations omitted); *see also MacDonald v. Gen. Motors Corp.*, 110 F.3d 337, 341 (6th Cir. 1997) ("Judicial admissions . . . typically concern only matters of fact."); *Glick v. White Motor Co.*, 458 F.2d 1287, 1291 (3d Cir. 1972) ("The scope of judicial admissions is restricted to matters of fact which otherwise would require evidentiary proof, and does not include counsel's statement of his conception of the legal theory of a case.").

In *Blankenship*, the plaintiff, a member of a water supply corporation, clashed with the defendants over alleged interference with

the plaintiff's candidacy to run for the corporation's board. 653 F. App'x at 333. The plaintiff first filed suit in state court. In the state court proceedings, the defendants "invoked" as a defense "the Texas doctrine of official immunity, available only to public officials." *Id.* at 335. The plaintiff decided to non-suit the state action and brought a civil rights action in federal court instead, asserting claims against public officials under 42 U.S.C. § 1983. In the federal litigation, the defendants moved to dismiss the § 1983 claims because they were not "state actors," to which the plaintiff argued they had judicially admitted they were state actors by pleading the Texas official immunity defense in the prior state court proceedings. *Id.* at 335. This Court disagreed with the plaintiff because a judicial admission only occurs when "a party admitted a *fact* in a *live pleading* submitted in the *case in which the pleading was filed.*" *Id.* at 336 (emphasis in original). A legal theory raised as a defense in a prior state court case "does not have binding effect in [a] separate, federal proceeding." *Id.*; *see also Universal Am. Barge Corp*, 946 F.2d at 1142.

Here, the District Court was presented with the same scenario as in *Blankenship* but failed to follow this Court's decision. The District Court claimed to sidestep the issue of whether the affirmative defense

was a judicial admission—deeming the question "of no consequence for the purposes of resolving this motion"—but nonetheless proceeded to treat Genesis' "statement" in its answer as a cumulative piece of "evidence" demonstrating a reasonable possibility that Darrow's claim would exceed the value of the Vessels.[50] That was wrong. Genesis pled limitation as an affirmative defense in state court merely to preserve it. Like the affirmative defense of official immunity pled in state court in *Blankenship*, the defense has no binding evidentiary effect in this subsequent federal limitation action. Furthermore, like the state action defense in *Blankenship*, limitation of liability is a legal theory, and even though it may require a "fact-bound inquiry" like the defense raised in *Blankenship*, it is not itself a fact that can be admitted or waived.

Therefore, the District Court erred in treating Genesis' affirmative defense in state court as factual evidence supporting entry of summary judgment in Darrow's favor on the issue of timeliness.

---

[50] ROA.914–915 (District Court's Order Granting Summary Judgment, at 15–16).

### 3. The District Court Improperly Credited Darrow's Evidence and Drew Inferences in Darrow's Favor

The District Court further erred by crediting Darrow's evidence over Genesis' competing evidence and drawing inferences in favor of Darrow (the moving party) and against Genesis (the nonmoving party).

As noted above, written notice triggers the 6-month period to file a limitation action only if (1) "the writing communicates the *reasonable possibility* of a claim" and (2) "it communicates the *reasonable possibility* of damages in excess of the vessel's value." *In re RLB Contracting*, 773 F.3d at 602 (emphasis in original). There is no question that Darrow's initial notice and state court petition triggered the first prong of the notice inquiry, by indicating the possibility of a claim. But as Genesis argued to the District Court below, there was no evidence demonstrating a *"reasonable possibility"* that Darrow's claim could exceed the value of Genesis' Vessels until Darrow served his supplemental expert reports and made his $20 million settlement demand in August 2024.

Although the "reasonable possibility" standard is not stringent, it is "not toothless." *Id.* at 603 (citing *In re Eckstein*, 672 F.3d at 317). In other words, the standard must incorporate some limiting principle—*i.e.*, reasonableness—or it would cease to be a standard at all and would

require prudent vessel owners to file limitation actions after every minor bump and scrape involving a vessel. Indeed, there is always a *possibility* that a claim could exceed the value of a given vessel. That is why, according to this Court, "reasonableness" is the limiting principle on "possibility," giving the notice requirement "teeth." *Id.*

Whether the possibility is "reasonable" is a necessarily "fact-intensive inquiry into the circumstances of the case." *In re Eckstein*, 672 F.3d at 317. So a court must determine "reasonableness" by comparing "the nature and severity of the [injury] alleged" to "the value of the vessels." *Orion Marine Constr., Inc. v. Carroll*, 918 F.3d 1323, 1336 (11th Cir. 2019). If, for example, Darrow's state court petition had alleged a catastrophic accident or injury, and had it involved a modestly valued vessel, then the reasonableness of the possibility is certainly implicated. But the possibility becomes far more remote—as in this case—where objective evidence and allegations indicated a routine back injury to a low-wage employee, and the Vessels are worth $12.5 million.

The Second Circuit, in *In re Morania Barge No. 190, Inc.*, 690 F.2d 32 (2d Cir. 1982), addressed this very scenario where evidence of a routine injury became significantly more severe only after years of

litigation. There, the state court action had been pending more than 4 years and the case had been put on the state court's "Ready for Trial" calendar when the claimant suddenly moved to amend its complaint and increase the amount of damages sought from $366,563.94 to $2.5 million. *Id.* at 33. The district court found that the vessel owner's subsequent petition for limitation of liability was untimely, but the Second Circuit reversed, noting that until the sudden change, the "claims were substantially less than the value of the Barge and its pending freight ($478,093.75)." *Id.* at 35.

Here too Darrow's early claim, which was vague and extremely speculative, reasonably appeared to be "substantially less" than the $12.5 million value of the Vessels. Until August 2024, nothing in Darrow's state court petition, discovery, or medical documentation gave rise to a *reasonable* possibility that this Jones Act claim might exceed $12.5 million.[51] Darrow, a tankerman, did not have a high earning capacity.[52] The petition gave no specifics on the type of alleged injury, beyond vague assertions that Darrow "sustained serious, painful injuries to his back,

---

[51] *See* ROA.686–687 (McLeod Declaration, ¶¶ 4, 7).

[52] *See* ROA.688–689 (Darrow's State Court Petition for Damages, ¶ 6) (alleging that Darrow earned $250 per day plus benefits).

spine and other parts of his body and psychological, mental, and/or emotional injuries."[53]  With no numerical value attached to the petition or medical documentation, Genesis was left to determine on its own whether there was a reasonable possibility the claim might exceed $12.5 million.  *See Marquette Transp. Co. v. Great Lakes Dredge & Dock Co.*, 524 F. App'x 989, 991–92 (5th Cir. 2013) (citing *In re Eckstein*, 672 F.3d at 317–18).  As a reference point, Genesis could "resort to prior awards" in similar cases when determining the "highest point" for a reasonable jury award.  *See Howard v. Union Carbide Corp.*, 50 So. 3d 1251, 1256 (La. 2010).  Taking that approach, no award for a similar back injury in Louisiana had come close to $12.5 million prior to August 2024.[54]  And as

---

[53] ROA.689 (Darrow's State Court Petition for Damages, ¶ 6).

[54] *See, e.g.*, *Bryant v. Helix Energy Sols., Inc.*, 404 So. 3d 804 (La. App. 1st Cir. 2024) (jury awarding, in 2023, $125,000 to a Jones Act seaman who had back surgery after he fell from a ladder on a vessel); *Vincent v. Nat'l Gen. Ins. Co.*, 399 So. 3d 140 (La. App. 5th Cir. 2024) (court awarding, in 2023, $272,504.63 for general damages, lost income, and special damages for car accident causing injuries to plaintiff's neck and back, traumatic brain injuries, and cervical surgery); *Smith v. United Servs. Auto. Ass'n*, 405 So. 3d 749 (La. App. 1st Cir. 2024) (jury awarding, in 2023, $131,000 for general damages, lost enjoyment of life, medical expenses and special damages for car accident causing injuries to plaintiff's neck, back, head, and traumatic brain injuries); *Harris v. Kansas City S. Ry. Co.*, 399 So. 3d 532 (La. App. 2d Cir. 2024) (finding in "a sampling of jurisprudence involving back injuries and subsequent surgeries" that "awards of general damages range from $100,000 to $2,000,000," and affirming jury award of $3,231,941.87 for physical, mental, and life altering injuries because in cases involving similar serious cervical and lumbar injuries, "the general damage awards were adjusted to levels within the range of $1,000,000.00 to $4,400,000.00," general damage awards for post-traumatic stress

explained above, Darrow's own expert reports in January 2024 confirmed that his claim did not approach the value of the Vessels.

In limitation actions where this Court has found sufficient written notice, the alleged injuries in those cases were far more catastrophic than Darrow's, and the values of the vessels were far less than $12.5 million. In *RLB Contracting*, for example, all occupants of a boat thrown overboard suffered severe physical injuries and a child died, and the value of the vessel was only $750,000. 773 F.3d at 599. This Court held that the vessel owner should have realized that an action involving the death of a child would exceed the small value of the vessel. *Id.* at 606. Similarly, in *Eckstein*, the claimant's injuries were both gruesome— according to eyewitness testimony, claimant's "foot was hanging off of his leg at . . . a 90 degree angle" and there was "blood everywhere"—and "permanent and catastrophic." 672 F.3d at 317–18. As in *RLB Contracting*, this Court held in *Eckstein* that the vessel owner should have been on notice that there was a reasonable possibility that damages

---

disorder "were adjusted to $500,000.00 to $1,600,000.00," and "general damage awards for shoulder injuries with surgery in the adjusted range of $795,000.00 to $878,000.00.5").

for injuries that severe might exceed the $750,000 value of the vessel. *Id.* at 319.

The factual scenario here could not be more distinct from *RLB Contracting* and *Eckstein*—this was a non-fatal line-handling back injury and the Vessels are worth $12.5 million. The Eleventh Circuit in *Orion Marine*, when presented with both *RLB Contracting* and *Eckstein*, said:

> Needless to say, the nature and severity of the property damage alleged here pale in comparison to the claims for "permanent and catastrophic" personal injuries in *Eckstein* and wrongful death in *RLB Contracting*. And on the other side of the ledger, the value of the vessels here—more than $1.2 million—is significantly higher than in those cases.

918 F.3d at 1336. This case is far more similar to *Orion Marine* than *RLB Contracting* and *Eckstein*. The District Court failed to recognize that "the nature and severity of the" simple back injury initially "alleged here pale[s] in comparison to the claims for 'permanent and catastrophic' personal injuries in *Eckstein* and wrongful death in *RLB Contracting*." *Id.* Likewise, the value of Genesis' vessels here, $12.5 million, "is significantly higher than in those cases [$750,000]." *Id.*

The District Court also ignored evidence that Darrow was only a "newly minted," low earning tankerman, and that his lost future wages claim was extremely speculative. Instead, the District Court viewed in

Darrow's favor his laundry list of injuries, medical treatments, and expert opinions,[55] and decided that "these additional facts put to rest the question" of whether Genesis possessed written notice of the reasonable possibility that the claim would exceed the value of the Vessels before August 2024.[56] That was error. The District Court at summary judgment should have viewed the facts in the light most favorable to the nonmoving party, Genesis, instead of simply adopting Darrow's interpretation of his vague injuries, and ignoring his low earning capacity and the high value of the Vessels.

The District Court further employed the wrong standard when it found that Genesis "seems to want to place a burden on Darrow" to explicitly claim damages above the value of the Vessels.[57] This is another clear inference in favor of the moving party. It is also wrong. Genesis did consider the allegations in Darrow's petition, subsequent discovery, and original expert reports, and "resort[ed] to prior awards" in similar cases to determine the "highest point" for a reasonable jury award. *See*

---

[55] *See* ROA.913, ROA.915–916 (District Court's Order Granting Summary Judgment, at 14, 16–17).

[56] *See* ROA.916–917 (District Court's Order Granting Summary Judgment, at 17–18).

[57] ROA.917 (District Court's Order Granting Summary Judgment, at 18).

*Howard*, 50 So. 3d at 1256. As Genesis' counsel attested, Genesis did not believe there was any *reasonable* scenario in which Darrow could potentially recover more than $12.5 million until August 2024.[58]

The District Court focused on Genesis' acknowledgment that it was in receipt of certain documents, such as Darrow's medical records and expert reports, on certain dates.[59] But the District Court failed to consider (again, in the light most favorable to Genesis) that just because Genesis *received* these documents, that did not equate to the documents indicating a reasonable possibility that Darrow's claim could reach the value of the Vessels, given the extremely speculative nature of Darrow's claim for lost wages, the nature of his injuries, and the high value of the Vessels.[60]

---

[58] *See* ROA.686–687 (McLeod Declaration, ¶¶ 4, 7).

[59] *See, e.g.*, ROA.915–916 (District Court's Order Granting Summary Judgment, at 16–17) ("On April 3, 2023, Genesis admits it was aware of Dr. Andre Todd's supplemental report[.]"); ("Genesis further confirms it received Dr. Dietze's report on August 1, 2023[.]"); ("Genesis was also aware Darrow underwent another surgery in September 2023[.]"); ("In January 2024, Genesis admits it was made aware that Darrow's experts estimated Darrow's loss of wages[.]"); ("Genesis possessed information almost a full year prior to June 2024[.]").

[60] *See, e.g.*, ROA.824–825 (Genesis's Response to Darrow's Statement of Uncontested Material Facts, at 5–6) ("Admitted. However, Dr. Dietz's ADA report did not indicate that Darrow's claim reasonably could exceed $12.5 million."); ("Admitted. However, the operative report did not indicate that Darrow's claim reasonably could exceed $12.5 million."); ("Admitted. However, the medical report did not indicate that Darrow's claim reasonably could exceed $12.5 million.").

Darrow admitted that deciding when Genesis was put on notice of a reasonable possibility "requires a 'fact-intensive inquiry into the circumstances of the case.'"[61]   At minimum, the District Court's "fact bound" inquiry as to when Genesis first received written notice giving rise to a *reasonable* possibility should have resulted in finding a genuine dispute of material fact.  *In re Eckstein*, 672 F.3d at 317.  Indeed, that was precisely what the District Court concluded just a few years ago in a strikingly similar scenario.  *See In re Chem Carriers Towing, LLC*, 599 F. Supp. 3d 405, 412 (E.D. La. 2022) ("[A] genuine issue of material fact exists as to when [the vessel owner] had notice of a reasonable possibility of a claim that exceeded the value of the Vessel.").[62]

In short, the District Court erred by granting Darrow's motion for summary judgment and should have found that this limitation action was timely filed or, at a bare minimum, that genuine disputes of material fact precluded summary judgment.

---

[61] ROA.75 (Darrow's Motion for Summary Judgment, at 16) (quoting *In re Eckstein*, 672 F.3d at 317).

[62] Curiously, while both parties cited *Chem Carriers* in their respective briefs below, *see* ROA.75 (Darrow's Motion for Summary Judgment, at 16); ROA.666, ROA.681–82 (Genesis' Opposition to Summary Judgment, at 4, 19–20), the District Court failed to mention its own prior decision in its summary judgment ruling.

## CONCLUSION

This case presents an important first instance for this Court to apply *Bonvillian.* If that decision—namely that the 6-month deadline for filing limitation actions under 46 U.S.C. § 30529(a) is merely a claim-processing rule—means anything, it must mean that the deadline is less stern than it used to be when it was considered a jurisdictional rule, and that it should be interpreted in a way that does not encourage vessel owners to file premature or preemptive limitation actions. This Court should take the opportunity presented by this case to clarify these important implications of *Bonvillian.*

And once the implications of *Bonvillian* are properly understood, the District Court's errors in this case become glaring. The District Court improperly found that Genesis' affirmative defense of limitation in state court was a factual admission of the reasonable possibility that Darrow's claim would exceed the value of the Vessels. The District Court also failed to resolve all ambiguities, draw all permissible inferences, and view the evidence in the light most favorable to Genesis as the nonmoving party, instead crediting the evidence and inferences advanced by Darrow as the moving party.

Ultimately, this Court should reverse the District Court's summary judgment ruling and hold that Genesis' limitation action was timely filed within 6 months of being first put on notice in August 2024 that Darrow's claim might reasonably exceed the value of the vessels or, alternatively, that there are at least genuine factual disputes regarding when Genesis first received sufficient notice and, thus, whether this limitation action was timely filed.

Respectfully submitted,

/s/ Jeremy T. Grabill

Evans Martin McLeod (Bar No. 24846)
Jeremy T. Grabill (La. Bar No. 34924)
Patrick M. Judd (Bar No. 40415)
PHELPS DUNBAR LLP
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130
Telephone: (504) 566-1311
Facsimile: (504) 568-9130
Email:    marty.mcleod@phelps.com
          jeremy.grabill@phelps.com
          patrick.judd@phelps.com

*ATTORNEYS FOR PETITIONER-APPELLANT GENESIS MARINE, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 16, 2025, I electronically filed the above and foregoing Original Brief of Petitioner–Appellant Genesis Marine, LLC, with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all counsel of record in this matter.

SO CERTIFIED, this 16th day of June, 2025.

*/s/ Jeremy T. Grabill*
Jeremy T. Grabill

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rules of Appellate Procedure 32(g) and Fifth Circuit Rule 32.3, the undersigned counsel certifies as follows:

1.      This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 9,288 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2.      This brief complies with the typeface and typestyle requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 software in Century Schoolbook 14-point font in the text and Century Schoolbook 12-point font in footnotes.

SO CERTIFIED, this 16th day of June, 2025.

 */s/ Jeremy T. Grabill*
Jeremy T. Grabill